UPHAM & GORDON

*v.*

CLARENCE G. RICHEY *et al.*

*Filed at Ottawa November 9, 1896.*

1. SALES—*when bill of sale absolute on its face is merely a pledge.* A bill of sale, executed with an agreement providing that the seller continue the business in his own name and at his own expense, applying the profits to pay off the seller's note on which the purchaser is surety, is, in effect, merely a pledge of the goods, the ownership remaining in the seller.

2. SAME—*bill of sale intended as security—principal and agent.* Where a bill of sale of goods is intended merely as security, the fact that the seller retains the goods and continues the business does not make him the agent of the ostensible purchaser, so as to bind such purchaser for debts contracted about the business.

*Upham & Gordon* v. *Richey,* 61 Ill. App. 650, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Henderson county; the Hon. JOHN J. GLENN, Judge, presiding.

December 4, 1889, Ira Putney, doing a mercantile business under the name of Ira Putney & Co., at Stronghurst, Illinois, borrowed $7000, for which he and one George M. Foote gave their joint promissory notes. On the same day, in consideration of the said sum of $7000, Putney made a bill of sale, by which he sold to Foote a stock of general merchandise and unbalanced book accounts, the parties at the same time entering into an agreement in writing, as follows:

"*December 4, 1889.*

"*Know all men by these presents,* That we, Ira Putney & Co., of Stronghurst, in the county of Henderson and State of Illinois, in consideration of the sum of $7000 to us paid by George M. Foote, of said county, at and before the sealing and delivery of these presents, have bargained, sold and delivered, and by these presents do bargain, sell and deliver, unto the said George M. Foote, all of our stock of general merchandise,—that is to say, dry goods, boots and shoes, clothing, notions of every kind

and nature, crockery ware, and every kind of goods,—in the building known as the Thornber building, except owned by Anna Penney; also all unbalanced accounts on books to be included in this bill of sale; to have and to hold the said goods unto the said George M. Foote, his executors, administrators and assigns, to his and their own proper use and benefit forever. And we, the said Ira Putney & Co., for ourselves and heirs, executors and administrators, will warrant and defend against all persons whomsoever.

"Witness our hands and seals.         IRA PUTNEY & Co.

"This agreement, made this 4th day of December, A. D. 1889, between George M. Foote of the first part and Ira Putney of the second part:

"*Witnesseth*, That the said George M. Foote, in consideration of covenants of the party of the second part hereinafter contained, doth agree with the party of the second part to allow him the privilege of using the stock of merchandise and goods, the privilege of buying and selling, but not to incur any indebtedness on the stock. All goods purchased to be paid for on receipt of same, and at all times, on demand of party of first part, to show all books and accounts. The party of second part, in consideration of covenants of party of the first part, agrees to do all the matters and things connected with the business of a merchant without cost to party of the first part, and to apply all profits of the business to the payment of the indebtedness of $7000. The notes indicating said indebtedness are signed by Ira Putney and George M. Foote. It is further agreed between the parties that the goods shall not be removed from the store they now occupy without the consent of George M. Foote. Said party of the second part to pay all clerk hire and all freight bills, taxes on stock, etc. Said business of general merchandising to be run or carried on under the name of Ira Putney. The principal and interest on said notes for $7000 to be paid by Ira Putney as required or specified in said obligations. Party of the first part to have what goods and merchandise he uses at wholesale cost price. This sum of $7000 to be applied and used in this trade.                                    IRA PUTNEY,

*December 4, 1889.*                        GEORGE M. FOOTE."

The business was carried on under this arrangement until January, 1891, when the stock of goods was partially destroyed by fire. Foote received $3000 insurance for

that loss, of which he retained $600, the balance, with the remaining goods and notes and accounts belonging to the business, being used in re-establishing the same. The foregoing agreement for the conduct of the business by Putney was again entered into, with a modification as to the removal of the goods made necessary by the burning of the former place. From February 13, 1891, to November 20, 1892, Putney purchased of appellants goods for the firm business amounting to $2228.58, which was reduced by credits to $1275.48. For this amount suit was brought and judgment obtained in the circuit court of Henderson county, against Putney and Foote · jointly. On appeal to the Appellate Court for the Second District a judgment of reversal and remandment was entered. (Decided with the case of *Foote* v. *Off & Co.* 45 Ill. App. 516.) At the March term, 1894, of the circuit court the case was re-docketed. Foote having died in the previous January, these appellees were made defendants as his executors, and the suit dismissed as to Putney. The case was then tried before the court without a jury and judgment rendered for the defendants, and that judgment has been affirmed by the Appellate Court.

J. J. & G. TUNNICLIFF, and J. A. MCKENZIE, for appellants.

KIRKPATRICK & ALEXANDER, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Appellants' contention is, that by the terms of the written agreement between Foote and Putney the former was the owner and proprietor of the business, the latter being merely his agent for conducting and carrying on the business, and that Foote became liable to them under the rule that the principal is liable for debts contracted by his agent, and on the trial of the case they asked the court to hold certain propositions as the law of the case intended to present that theory, which were refused.

The correctness of that ruling is the only question of law presented for our decision. With controverted questions of fact we have nothing to do.

Counsel seem to understand that unless the transactions between the parties, as evidenced by their written agreements, amount, in law, to a valid chattel mortgage of the stock of goods from Putney to Foote, the latter must be held the absolute owner of the property, and hence liable to appellants. But that position, in our view of the case, cannot be maintained. Appellants are not seeking to reach the stock of merchandise for the satisfaction of their debt. If they had sued Putney, to whom they sold the goods, and levied upon this particular property in his possession, no argument would be needed to show that they could hold it against any claim of Foote under a chattel mortgage; but the question upon this record whether Foote became the absolute owner of the stock of goods or only obtained a lien upon it to indemnify him as security for Putney, is only material in so far as the determination of it will settle the particular question, Is he liable as principal for goods purchased by his agent, Putney?—the vital question, as before indicated, being, did Foote, by these written agreements, become the proprietor of the store. If he did not, then he never became liable to appellants, no matter whether he had a valid lien upon the property or not.

One of two constructions of the contract, when read in the light of the bill of sale executed at the same time, is inevitable. Either Foote became the owner and proprietor of the business, with Putney as his agent to carry on and manage the same, or else Putney continued to be the owner and proprietor, simply giving Foote a pledge of the goods and profits of the business as security for the payment of the $7000 in notes upon which he had become security. It may be admitted that the effect of the language of some parts of the contract is to show a sale of the property to Foote, he simply agreeing to al-

low Putney to manage and control the business for him; but there are some parts of the contract wholly inconsistent with that construction. To say that Putney was to be merely the agent or manager of the business for Foote, and still, in the language of the contract, to do so without cost to his principal, to pay all clerk hire and all freight bills, taxes on the stock, etc., is unreasonable. It is also evident, from the whole contract, that the principal purpose of the transaction was to secure the payment of the $7000 indebtedness, Putney agreeing to apply all profits of the business to the payment of the notes as required or specified in the obligations. The evidence introduced upon the trial explanatory of the circumstances under which the money was borrowed and the contemporaneous contracts entered into, makes it clear to our minds that the intention of the parties was to provide indemnity to Foote against loss as security upon those notes, and not to make a sale and transfer of the property. It is not pretended that Foote paid anything for the goods when he received the bill of sale. It certainly cannot be seriously contended that the parties contemplated that Putney should conduct the business at his own expense, keep up the stock of merchandise, pay off the entire $7000 indebtedness, and Foote be the owner of the entire stock and business after all this was done.

We think it clear from a proper construction of the agreements themselves, and especially under the competent evidence as to the facts and circumstances under which they were made, the propositions submitted to the trial court did not announce correct propositions of law and were properly refused.

The judgment of the Appellate Court should be affirmed.                    *Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT took no part.